**RECEIVED**

APR 2 2 2022

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

# IN THE UNITED STATES DISTRICT COURT

## EASTERN MISSOURI

PAUL BERRY III,

Division: _____

Plaintiff,

v.

Case Number: _____

JOHN R. (JAY) ASHCROFT,
in his official capacity as
Missouri Secretary of State and
STATE OF MISSOURI,

**Three-Judge Panel Requested
28 U.S.C. § 2284(a)**

Defendants.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff, Paul Berry III, and upon knowledge with respect to information, hereby allege for this Complaint for Declaratory and Injunctive Relief against Defendants, John R. ("Jay") Ashcroft and the State of Missouri, state as follows:

### INTRODUCTION

1. The State of Missouri is required to enact a new congressional map based upon the 2020 United States Census results, which provides the State of Missouri eight (8) congressional representatives and establishes significant congressional district population variations when compared with the current 2012 Missouri Congressional Map.

2. Despite the 2020 United States Census results being certified to the Missouri Governor

over eight months ago on August 12, 2021, the State of Missouri has failed to enact any new congressional map based upon the 2020 United States Census results to comply with the Missouri Constitution and United States Constitution.

3. The 2022 Missouri Primary congressional election is set pursuant to Missouri statute authorized by the Elections Clause for August 2, 2022.

4. Federal law requires absentee ballots for United States Service Members stationed overseas to be mailed to such United States Service Members no later than forty-five (45) days before the 2022 Missouri Primary congressional election or on June 18, 2022.

5. Missouri law prohibits any amendment to any Primary election ballot, regardless of whether such amendment to a Primary election ballot is ordered by a Missouri court, anytime after eight (8) weeks prior to the 2022 Missouri Primary congressional election or on June 7, 2022, inter alia, to provide the Missouri election authorities enough time to prepare printing and mailing of absentee ballots for United States Service Members stationed overseas no later than forty-five (45) days before the 2022 Missouri Primary congressional election or on June 18, 2022.

6. Missouri voters are entitled to know the identity of the 2022 Missouri Primary congressional candidates of the congressional district such Missouri voters reside in anytime after 5:00pm on March 29, 2022.

7. The failure of the State of Missouri to enact a new congressional map based upon the 2020 United States Census further causes the necessity for the Court to declare and enjoin

2

Missouri from violating its own election laws authorized by the Elections Clause relevant to the 2022 Missouri Primary congressional election.

## JURISDICTION AND VENUE

8.  This Court has jurisdiction over this action under 28 U.S.C. § 1331 and 28 U.S.C. § 1343 because Plaintiff's claims arise under—and seek redress pursuant to—the U.S. Constitution and 42 U.S.C. § 1983.

9.  This Court has jurisdiction over this action under 28 U.S.C. § 2201 and may grant injunctive relief pursuant to 28 USC App Fed R Civ P Rule 65.

10. Under 28 U.S.C. § 2284, a three-judge panel is required to hear and determine this Complaint.

11. Under 28 U.S.C. § 1391(b), venue is proper in this District because Plaintiff resides in and is a registered voter of this District, and both Defendant Ashcroft and Defendant Missouri each maintain an office located within this District.

12. Under 28 U.S.C. § 1391(b), venue is also proper in this District because the Missouri congressional district that Plaintiff is declared as a Primary candidate on behalf of is wholly-located within this District.

## THREE-JUDGE COURT REQUESTED

13. This Complaint challenges the constitutionality of the 2012 Missouri congressional map being utilized by the State of Missouri to conduct the 2022 Missouri Primary congressional Election set for August 2, 2022.

3

14. 28 U.S.C. § 2284(a) provides that "[a] district court of three judges shall be convened . . when an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body', and as such, Plaintiff respectfully request that the Court "immediately notify the chief judge of the circuit" so that the Chief Judge may "designate two other judges, at least one of whom shall be a circuit judge," to "serve as members of the court to hear and determine th[is] action." 28 U.S.C. § 2284(b)(1).

15. When adjudicating the challenge of a congressional map pursuant to 28 U.S.C. § 2284, the Supreme Court has indicated that a three-judge court could properly consider a statutory challenge "and grant relief in the exercise of jurisdiction ancillary to that conferred by the constitutional attack on the state statutes which plainly required a three-judge court." Allee v. Medrano, 416 U.S. 802, 812 (1974).

16. Further, a court can exercise ancillary jurisdiction when the "claims . . . are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a), such as restraining Defendants from violating constitutional and statutory election laws.

## PARTIES

17. Plaintiff Paul Berry III is a registered voter and resident of Missouri Congressional District 2 and St. Louis County, Missouri. Mr. Berry is a declared candidate for Missouri Congressional District 2 Republican nomination during the 2022 Missouri Primary congressional election.

18. Defendant John R. ("Jay") Ashcroft is the Missouri Secretary of State and is named as a Defendant in his official capacity. Mr. Ashcroft as the Missouri Secretary of State is the chief election official on behalf of the State of Missouri and is responsible for conducting and certifying the 2022 Missouri congressional elections pursuant to Missouri statutes and the Constitution of the State of Missouri.

19. Defendant State of Missouri is the 24th state to join the Union on August 10, 1821, and is required to abide by Missouri statute, the Missouri Constitution and the United States Constitution.

## **Factual Allegations**

### I. **The 2012 Missouri Congressional Map is Unconstitutional for the Purpose of Conducting the 2022 Missouri Primary Congressional Election (Counts I, II and III)**

20. The only Missouri constitutional or statutory provision establishing the procedure for congressional reappointment is MO Const art III § 45, which fully states:

> "When the number of representatives to which the state is entitled in the House of the Congress of the United States under the census of 1950 and each census thereafter is certified to the governor, the general assembly shall by law divide the state into districts corresponding with the number of representatives to which it is entitled, which districts shall be composed of contiguous territory as compact and as nearly equal in population as may be."

21. MO Const art III § 45 requires the State of Missouri to enact by statute a congressional map based upon the 2020 U.S. Census certified to the Governor of the State of Missouri that is "composed of contiguous territory as compact and as nearly equal in population as may be."

22. On August 12, 2021, the 2020 U.S. Census was certified to the Governor of the State of Missouri by the United States Census Bureau.

23. After eight months, Defendant Missouri has failed to enact any 2022 Missouri congressional map based upon the 2020 U.S. Census results certified to the Governor of the State of Missouri on August 12, 2021.

24. After the certification of the results of each decennial census conducted by the United States Census Bureau, the Missouri General Assembly is required to draft a new congressional map, specifically: "States must redistrict to account for any changes or shifts in population." *Georgia v. Ashcroft*, 539 U.S. 461, 488 n.2 (2003).

25. The current Missouri congressional map was enacted by the Missouri General Assembly voting to override the Missouri Governor's veto of such Missouri congressional map on May 4, 2011 ("2012 Missouri Congressional Map").

26. 2012 Missouri Congressional Map was drafted by the Missouri General Assembly utilizing population data from the 2010 United States Census, which provided at the time 2012 Missouri Congressional Map was enacted by the Missouri General Assembly seven (7) congressional districts with a population of 748,616 and one (1) congressional district with a population of 748,615, which equates to a maximum population deviation between congressional districts of one person.

27. Based upon the 2020 United States Census results, the State Missouri is appointed eight (8) congressional representatives with a target population of 769,364 per congressional district.

28. Based upon the 2020 United States Census results certified to the Missouri Governor on August 12, 2021, the following calculations represents the change of population for each

6

Missouri congressional district represented by the 2012 Missouri Congressional Map:

| | 2012 CD Map Population | 2022 CD Map Ideal Population | 2020 CD Population | 2022 CD Map Ideal Population Deviation |
|---|---|---|---|---|
| District 1: | 748,616 | 769,364 | 714,731 | -54,633 |
| District 2: | 748,616 | 769,364 | 777,688 | 8,324 |
| District 3: | 748,615 | 769,364 | 804,505 | 35,141 |
| District 4: | 748,616 | 769,364 | 777,217 | 7,853 |
| District 5: | 748,616 | 769,364 | 788,310 | 18,946 |
| District 6: | 748,616 | 769,364 | 781,000 | 11,636 |
| District 7: | 748,616 | 769,364 | 792,214 | 23,055 |
| District 8: | 748,616 | 769,364 | 719,043 | -50,321 |

29. The 2012 Missouri Congressional Map violates the "nearly equal in population as may be" provision of MO Const art III § 45 for use as a congressional map to conduct the 2022 Missouri Primary congressional election based upon the significant population deviations reflected between the 2012 Missouri Congressional Map and the 2020 U.S. Census results certified to the Governor of the State of Missouri.

30. The Supremacy Clause of the United States Constitution requires the State of Missouri to abide by the United States Constitution when enacting any congressional redistricting map.

31. The "*One Man, One Vote*" provision of US Const art I § 2 requires the State of Missouri from utilizing congressional district boundaries that establish congressional district populations that are as near as practical.

32. US Const art I § 2 provides as declared by the United States Supreme Court in *Wesberry*

*v. Sanders*, 376 US 1 - (1964):

> "We hold that, construed in its historical context, the command of Art. I, § 2, that
> Representatives be chosen "by the People of the several States"[9] means that as nearly as
> is practicable one man's vote in a congressional election is to be worth as much as
> another's.[10] This rule is followed automatically, of course, when Representatives are
> chosen as a group on a statewide basis, as was a widespread practice in the first 50 years
> of our Nation's history.[11] It would be extraordinary to suggest that in such statewide
> elections the votes of inhabitants of some parts of a State, for example, Georgia's thinly
> populated Ninth District, could be weighted at two or three times the value of the votes of
> people living in more populous parts of the State, for example, the Fifth District around
> Atlanta. Cf. Gray v. Sanders, 372 U. S. 368. We do not believe that the Framers of the
> Constitution intended to permit the same vote-diluting discrimination to be accomplished
> through the device of districts containing widely varied numbers of inhabitants. To say
> that a vote is worth more in one district than in another would not only run counter to our
> fundamental ideas of democratic government, it would cast aside the principle of a House
> of Representatives elected "by the People," a principle tenaciously fought for and
> established at the Constitutional Convention. The history of the Constitution, particularly
> that part of it relating to the adoption of Art. I, § 2, reveals that those who framed the
> Constitution meant that, no matter what the mechanics of an election, whether statewide
> or by districts, it was population which was to be the basis of the House of
> Representatives."

33. Due to population changes over the past decade, the State of Missouri's current

congressional districts are both unlawful and unconstitutional, and as such, the current

configuration of the State of Missouri's congressional districts violates Article I, Section 2 of the

U.S. Constitution's requirement that states must "achieve population equality 'as nearly as is

practicable'" when drawing congressional districts. Karcher v. Daggett, 462 U.S. 725, 730

(1983) (quoting Wesberry v. Sanders, 376 U.S. 1, 7- 8 (1964)); see also Reynolds v. Sims, 377

U.S. 533 (1964).

34. The Equal Protections Clause of US Const art XIV requires the State of Missouri to

maintain congressional districts apportioned on a population basis.

35. The State of Missouri failing to enact any 2022 Missouri congressional map does not constitute any legitimate considerations intended to effectuate rational state policy permitting any population deviation between congressional districts provided by the current 2012 Missouri Congressional Map.

36. As the United States Supreme Court stated in *Evenwel v. Abbott*, 136 S. Ct. 1120 (2016):

> "The product of these debates was § 2 of the Fourteenth Amendment, which retained total population as the congressional apportionment base. See U.S. Const., Amdt. 14, § 2 ("Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State, excluding Indians not taxed."). Introducing the final version of the Amendment on the Senate floor, Senator Jacob Howard explained:
>
>> "[The] basis of representation is numbers...; that is, the whole population except untaxed Indians and persons excluded by the State laws for rebellion or other crime.... The committee adopted numbers as the most just and satisfactory basis, and this is the principle upon which the Constitution itself was originally framed, that the basis of representation should depend upon numbers; and such, I think, after all, is the safest and most secure principle upon which the Government can rest. Numbers, not voters; numbers, not property; this is the theory of the Constitution." Cong. Globe, 39th Cong., 1st Sess., 2766-2767 (1866).
>
> ***
>
> "The debates at the [Constitutional] Convention," the Court explained, "make at least one fact abundantly clear: that when the delegates agreed that the House should represent 'people,' they intended that in allocating Congressmen the number assigned to each state should be determined solely by the number of inhabitants." 376 U.S., at 13, 84 S.Ct. 526. "While it may not be possible to draw congressional districts with mathematical precision," the Court acknowledged, "that is no excuse for ignoring our Constitution's plain objective of making equal representation for equal numbers of people the fundamental goal for the House of Representatives." Id., at 18, 84 S.Ct. 526 (emphasis added)."

37. *Evenwel v. Abbott* further states:

"And the Court has suggested, repeatedly, that districting based on total population serves both the State's interest in preventing vote dilution and its interest in ensuring equality of representation. See Board of Estimate of City of New York v. Morris, 489 U.S. 688, 693-694, 109 S.Ct. 1433, 103 L.Ed.2d 717 (1989) ("If districts of widely unequal population elect an equal number of representatives, the voting power of each citizen in the larger constituencies is debased and the citizens in those districts have a smaller share of representation than do those in the smaller districts."). See also Kirkpatrick, 394 U.S., at 531, 89 S.Ct. 1225 (recognizing in a congressional-districting case that "[e]qual representation for equal numbers of people is a principle designed to prevent debasement of voting power and diminution of access to elected representatives")."]:

38. The 2012 Missouri Congressional Map violates the "*One Man, One Vote*" provision of US Const art I § 2 and the Equal Protections Clause of US Const art XIV for use as a congressional map to conduct the 2022 Missouri Primary congressional election due to the substantial population deviations between the eight (8) congressional districts of the 2012 Missouri Congressional Map and the 2020 U.S. Census results certified to the Governor of the State of Missouri.

39. The Missouri "General Assembly's failure to provide a means for congressional representation would, if unremedied, result in an unconstitutional deprivation" of Plaintiffs' right to select representatives, as the current congressional districts are "patently and obviously unconstitutional." Shayer v. Kirkpatrick, 541 F. Supp. 922, 925 (W.D. Mo. 1982) (quoting Wright, Miller, and Cooper, Fed. Prac. and Procedure, § 4235, at 400).

40. 2 U.S. Code § 2a(c) requires the State of Missouri to utilize the unconstitutional 2012 Missouri Congressional Map in the event that no 2022 Missouri congressional map is enacted prior to the 2022 Missouri Primary congressional election, which states in relevant part:

"(c) Until a State is redistricted in the manner provided by the law thereof after any apportionment, the Representatives to which such State is entitled under such apportionment shall be elected in the following manner: (1) If there is no change in the

number of Representatives, they shall be elected from the districts then prescribed by the law of such State, and if any of them are elected from the State at large they shall continue to be so elected;"

41. The *Purcell* principle is a series of rulings from the United States Supreme Court that if applied by the Court in the instant Complaint would prohibit Plaintiff from receiving judicial relief from Defendants utilizing an unconstitutional congressional map at an unset date prior to the 2022 Missouri Primary congressional election.

42. Without the Court's immediate adjudication of this Complaint, six million Missourians will be bound to a congressional map that grossly conflicts with various amendments of the Missouri Constitution and the United States Constitution.

## II. Defendant Ashcroft is Required to Abide by Missouri Election Law and the Missouri Constitution Irrespective of Defendant Missouri Failing to Enact a 2022 Missouri Congressional Map (Counts IV, V and VI)

43. The Elections Clause of the U.S. Constitution assigns the Missouri General Assembly the responsibility to establish for congressional elections: "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof." U.S. CONST. art. I § 4, cl. 1.

44. Defendant Ashcroft, as the Missouri Secretary of State, is responsible for conducting Missouri congressional elections on behalf of the State of Missouri, specifically, Defendant Ashcroft is required to abide by MO Const art III § 29, MO Const art III § 45, §§ 115.121(2), 115.34, 115.349(1) and 115.349(2) RSMo set by the Missouri General Assembly, inter alia, to comply with the Elections Clause when conducting any congressional elections on behalf of the State of Missouri.

45. Section 115.349(2) RSMo states: "No declaration of candidacy for nomination in a primary election shall be accepted for filing prior to 8:00 a.m. on the last Tuesday in February immediately preceding the primary election."

46. On February 22, 2022, the Missouri Secretary of State began accepting congressional candidate filing for the 2022 Missouri Primary congressional election set to occur pursuant to 115.121(2) RSMo and section 115.341 RSMo on August 2, 2022.

47. On February 22, 2022, Plaintiff filed for the Republican nomination for Missouri Congressional District 2 along with other Primary congressional candidates in all eight (8) congressional districts in the State of Missouri, which required each Missouri Primary congressional candidate to declare before the Missouri Secretary of State which congressional district and political party such congressional candidates declared themselves a Primary candidate for.

48. MO Const art III § 45 declares any congressional map enacted by the Missouri General Assembly is a "law" or a Missouri statute, which is governed by MO Const art III § 29 and states:

> "No law passed by the general assembly, except an appropriation act, shall take effect until ninety days after the adjournment of the session in either oddnumbered or even-numbered years at which it was enacted. However, in case of an emergency which must be expressed in the preamble or in the body of the act, the general assembly by a two-thirds vote of the members elected to each house, taken by yeas and nays may otherwise direct; and further except that, if the general assembly recesses for thirty days or more it may prescribe by joint resolution that laws previously passed and not effective shall take effect ninety days from the beginning of the recess."

49. MO Const art III § 29 provides when any Missouri statute, such as a Missouri

congressional map, is enacted by the Missouri General Assembly without an emergency clause,

such Missouri statute will not go in effect until August 28, 2021, which is ninety (90) days after

the adjournment of the 2022 Missouri General Assembly set pursuant to MO Const art III § 20(a)

to "adjourn at midnight on May thirteenth" 2022.

50. Since the Missouri Primary congressional election day date is set pursuant to section

115.121(2) RSMo and section 115.341 RSMo for August 2, 2022, and any Missouri

congressional map enacted by the 101st Missouri General Assembly without an "emergency

clause" pursuant to MO Const art III § 29 will not go in effect until August 28, 2022, any such

Missouri congressional map enacted by the 101st Missouri General Assembly without an

"emergency clause" pursuant to MO Const art III § 29 may not be utilized to conduct any 2022

Missouri congressional elections, and as such, Defendant Ashcroft is constitutionally-barred

pursuant to MO Const art III § 29 from conducting any 2022 Missouri Primary congressional

election with any Missouri congressional map enacted by the 101st Missouri General Assembly

without an "emergency clause" pursuant to MO Const art III § 29.

51. Section 115.121(2) RSMo states "The primary election day shall be the first Tuesday

after the first Monday in August of even-numbered years."

52. Section 115.341 RSMo states: "For the nomination of candidates to be elected at the next

general election, a primary election shall be held on the first Tuesday after the first Monday in

August of even-numbered years."

53. Section 115.121(2) RSMo and section 115.341 RSMo provides the 2022 Missouri

Primary congressional election date shall be set for August 2, 2022.

54. There are only two legal authorities that authorize Missouri to change the 2022 Missouri Primary congressional election day date from August 2, 2022, which include section 44.100 RSMo or section 115.024 RSMo.

55. The Missouri Secretary of State is required pursuant to section 115.121(2) RSMo and section 115.341 RSMo to conduct a 2022 Missouri Primary election for United States Congress on August 2, 2022, unless the 2022 Missouri congressional date is rescheduled pursuant to section 44.100 RSMo or section 115.024 RSMo.

56. Pursuant to section 44.100 RSMo, the failure of the Missouri General Assembly to enact a Missouri congressional map does not constitute an "emergency" permitting the Missouri General Assembly to pass a resolution or the Missouri Governor to issue a proclamation granting the authority to change the 2022 Primary congressional election from any date other than "the first Tuesday after the first Monday in August of even-numbered years."

57. Pursuant to section 115.024 RSMo, the failure of the Missouri General Assembly to enact a Missouri congressional map does not constitute a "disaster" permitting the "election committee" consisting of three Missouri appellate judges to consider any petition to reschedule the 2022 Primary congressional election within the Eastern District Missouri Court of Appeals from any date other than "the first Tuesday after the first Monday in August of even-numbered year" as required by 115.121(2) RSMo and section 115.341 RSMo.

58. Neither section 44.100 RSMo or section 115.024 RSMo provides for the rescheduling of

the 2022 Primary congressional election from August 2, 2022, due to the failure of the Missouri

General Assembly to enact a 2022 Missouri congressional map or anything related to the 2012

Missouri Congressional Map, and as such, Defendant Ashcroft is statutorily-barred pursuant to

115.121(2) RSMo and section 115.341 RSMo, and constitutionally-barred pursuant to the

Elections Cause, from rescheduling the 2022 Primary congressional election from any date other

than August 2, 2022, due to the failure of the Missouri General Assembly to enact a 2022

Missouri congressional map or anything related to the 2012 Missouri Congressional Map.

59. Section 115.349(1) RSMo states: "Except as otherwise provided in sections 115.361 to

115.383 or sections 115.755 to 115.785, no candidate's name shall be printed on any official

primary ballot unless the candidate has filed a written declaration of candidacy in the office of

the appropriate election official by 5:00 p.m. on the last Tuesday in March immediately

preceding the primary election."

60. Pursuant to Section 115.349(1) RSMo, the Missouri Secretary of State was

statutorily-required to cease accepting or amending congressional candidate filing for the 2022

Missouri Primary congressional election at 5:00pm on March 29, 2022.

61. Sections 115.361 to 115.383 and sections 115.755 to 115.785 are irrelevant to Missouri

Primary congressional candidate elections.

62. There is no constitutional or statutory procedure that authorizes the Missouri Secretary of

State to permit Missouri congressional candidates to file or amend a congressional candidate

filing for the 2022 Missouri Primary congressional election after 5:00pm on March 29, 2022, and

as such, Defendant Ashcroft is statutorily-barred pursuant to Section 115.349(1) and

constitutionally-barred pursuant to the Elections Cause from permitting any Missouri

congressional candidates to file or amend a congressional candidate filing for the 2022 Missouri

Primary congressional election after 5:00pm on March 29, 2022.

**III.     Plaintiff is Irreparably Harmed by Defendants' Threatened Violations of the United
           States Constitution and Missouri Election Law**

63. There is no question that Plaintiff, both as a United States congressional candidate and a

Missouri voter, sits under irreparably harm by Defendants intending to utilize the 2012 Missouri

Congressional Map to conduct the 2022 Missouri Primary congressional election and the

uncertainty of whether Defendants may legally reschedule the 2022 Missouri Primary election

date based upon the delay of passing any 2022 Missouri congressional map, reopen 2022

Missouri Primary congressional election candidate filing or utilize any Missouri congressional

map that may be enacted by the Missouri General Assembly without an emergency clause to

conduct the 2022 Missouri Primary congressional election, all while the 2022 Missouri Primary

congressional election has commenced.

**COUNT I**
**Violation of Article I, Section 2 of the U.S. Constitution**
**"One Man, One Vote"**
**(42 U.S.C. § 1983)**

64. Plaintiff Berry incorporates by reference all preceding allegations and facts.

65. The State of Missouri is required to enact by statute a congressional map based upon the

2020 U.S. Census certified results that does not violate the *"One Man, One Vote"* provision of

US Const art I § II..

66. On August 12, 2021, the 2020 U.S. Census was certified to the Governor of the State of Missouri by the United States Census Bureau.

67. After eight months, Defendant Missouri has failed to enact any 2022 Missouri congressional map based upon the 2020 U.S. Census results certified to the Governor of the State of Missouri on August 12, 2021.

68. After the certification of the results of each decennial census conducted by the United States Census Bureau, the Missouri General Assembly is required to draft a new congressional map, specifically: "States must redistrict to account for any changes or shifts in population." *Georgia v. Ashcroft*, 539 U.S. 461, 488 n.2 (2003).

69. The current Missouri congressional map was enacted by the Missouri General Assembly voting to override the Missouri Governor's veto of such Missouri congressional map on May 4, 2011 ("2012 Missouri Congressional Map").

70. 2012 Missouri Congressional Map was drafted by the Missouri General Assembly utilizing population data from the 2010 United States Census, which provided at the time 2012 Missouri Congressional Map was enacted by the Missouri General Assembly seven (7) congressional districts with a population of 748,616 and one (1) congressional district with a population of 748,615, which equates to a maximum population deviation between congressional districts of one person.

71. Based upon the 2020 United States Census results, the State Missouri is appointed eight

17

(8) congressional representatives with a target population of 769,364 per congressional district.

72. Based upon the 2020 United States Census results certified to the Missouri Governor on August 12, 2021, the 2012 Missouri Congressional Map provides population deviations between the congressional district that violates the *"One Man, One Vote"* provision of US Const art I § II.

73. The 2012 Missouri Congressional Map is unconstitutional pursuant to Article III, Section II of the United States Constitution for the purpose of the State of Missouri conducting the 2022 Missouri Primary congressional election.

74. Defendants utilizing the 2012 Missouri Congressional Map to conduct the 2022 Missouri Primary congressional election is a civil rights violation against Plaintiff subject to the instant 42 U.S.C. § 1983 Complaint.

## COUNT II
### Violation of Fourteenth Amendment to the United States Constitution
### Equal Protection
### (42 U.S.C. § 1983)

75. Plaintiff Berry incorporates by reference all preceding allegations and facts.

76. The State of Missouri is required to enact by statute a congressional map based upon the 2020 U.S. Census certified results that does not violate the Equal Protection Clause of US Const art XVI.

77. On August 12, 2021, the 2020 U.S. Census was certified to the Governor of the State of Missouri by the United States Census Bureau.

78. After eight months, Defendant Missouri has failed to enact any 2022 Missouri congressional map based upon the 2020 U.S. Census results certified to the Governor of the State

of Missouri on August 12, 2021.

79. After the certification of the results of each decennial census conducted by the United States Census Bureau, the Missouri General Assembly is required to draft a new congressional map, specifically: "States must redistrict to account for any changes or shifts in population." *Georgia v. Ashcroft*, 539 U.S. 461, 488 n.2 (2003).

80. The current Missouri congressional map was enacted by the Missouri General Assembly voting to override the Missouri Governor's veto of such Missouri congressional map on May 4, 2011 ("2012 Missouri Congressional Map").

81. 2012 Missouri Congressional Map was drafted by the Missouri General Assembly utilizing population data from the 2010 United States Census, which provided at the time 2012 Missouri Congressional Map was enacted by the Missouri General Assembly seven (7) congressional districts with a population of 748,616 and one (1) congressional district with a population of 748,615, which equates to a maximum population deviation between congressional districts of one person.

82. Based upon the 2020 United States Census results, the State Missouri is appointed eight (8) congressional representatives with a target population of 769,364 per congressional district.

83. Based upon the 2020 United States Census results certified to the Missouri Governor on August 12, 2021, the 2012 Missouri Congressional Map provides population deviations between the congressional district that violates the Equal Protection Clause.

84. The 2012 Missouri Congressional Map is unconstitutional pursuant to Article XIV of the

United States Constitution for the purpose of the State of Missouri conducting the 2022 Missouri

Primary congressional election.

85. Defendants utilizing the 2012 Missouri Congressional Map to conduct the 2022 Missouri

Primary congressional election is a civil rights violation against Plaintiff subject to the instant 42

U.S.C. § 1983 Complaint.

## COUNT III
### Violation of Article III, Section 45 of the Missouri Constitution
### "Nearly Equal In Population As May Be"
### (The Elections Clause)

86. Plaintiff Berry incorporates by reference all preceding allegations and facts.

87. US Const art I § 4 states, "(t)he Times, Places and Manner of holding Elections for

Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the

Congress may at any time by Law make or alter such Regulations, except as to the Places of

chusing Senators", which requires the State of Missouri to abide by its own constitutional

amendments when utilized to conduct any congressional election.

88. The only Missouri constitutional or statutory provision establishing the procedure for

congressional reappointment is MO Const art III § 45, which fully states:

> "When the number of representatives to which the state is entitled in the House of the
> Congress of the United States under the census of 1950 and each census thereafter is
> certified to the governor, the general assembly shall by law divide the state into districts
> corresponding with the number of representatives to which it is entitled, which districts
> shall be composed of contiguous territory as compact and as nearly equal in population as
> may be."

89. MO Const art III § 45 requires the State of Missouri to enact by statute a congressional

map based upon the 2020 U.S. Census certified to the Governor of the State of Missouri that is

"composed of contiguous territory as compact and as nearly equal in population as may be."

90. On August 12, 2021, the 2020 U.S. Census was certified to the Governor of the State of

Missouri by the United States Census Bureau.

91. After eight months, Defendant Missouri has failed to enact any 2022 Missouri

congressional map based upon the 2020 U.S. Census results certified to the Governor of the State

of Missouri on August 12, 2021.

92. After the certification of the results of each decennial census conducted by the United

States Census Bureau, the Missouri General Assembly is required to draft a new congressional

map, specifically: "States must redistrict to account for any changes or shifts in population."

*Georgia v. Ashcroft*, 539 U.S. 461, 488 n.2 (2003).

93. The current Missouri congressional map was enacted by the Missouri General Assembly

voting to override the Missouri Governor's veto of such Missouri congressional map on May 4,

2011 ("2012 Missouri Congressional Map").

94. 2012 Missouri Congressional Map was drafted by the Missouri General Assembly

utilizing population data from the 2010 United States Census, which provided at the time 2012

Missouri Congressional Map was enacted by the Missouri General Assembly seven (7)

congressional districts with a population of 748,616 and one (1) congressional district with a

population of 748,615, which equates to a maximum population deviation between

congressional districts of one person.

95. Based upon the 2020 United States Census results, the State Missouri is appointed eight (8) congressional representatives with a target population of 769,364 per congressional district.

96. Based upon the 2020 United States Census results certified to the Missouri Governor on August 12, 2021, the 2012 Missouri Congressional Map provides population deviations between the congressional districts that are not "nearly equal in population as may be" in the manner required pursuant to MO Const art III § 45.

97. The 2012 Missouri Congressional Map violates the "nearly equal in population as may be" provision of MO Const art III § 45 for use as a congressional map to conduct the 2022 Missouri Primary congressional election based upon the significant population deviations reflected between the 2012 Missouri Congressional Map and the 2020 U.S. Census results certified to the Governor of the State of Missouri.

98. The 2012 Missouri Congressional Map is unconstitutional pursuant to Article III, Section 45 of the Missouri Constitution and the Elections Clause for the purpose of the State of Missouri conducting the 2022 Missouri Primary congressional election.

### COUNT IV
### Violation of Article III, Section 29 of the Missouri Constitution
### Congressional Map Statute Enactment Emergency Clause
### (The Elections Clause)

99. Plaintiff Berry incorporates by reference all preceding allegations and facts.

100. US Const art I § 4 states, "(t)he Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of

chusing Senators", which requires the State of Missouri to abide by its own election statutes

when utilized to conduct any congressional election.

101.    MO Const art III § 45 states "the general assembly shall by law divide the state into

districts corresponding with the number of representatives to which it is entitled", which clearly

declares that any Missouri congressional map enacted by the Missouri General Assembly

constitutes a Missouri statute.

102.    MO Const art III § 29 provides on what date any statute enacted by the Missouri

General Assembly goes into effect, which states:

> "No law passed by the general assembly, except an appropriation act, shall take effect
> until ninety days after the adjournment of the session in either oddnumbered or
> even-numbered years at which it was enacted. However, in case of an emergency which
> must be expressed in the preamble or in the body of the act, the general assembly by a
> two-thirds vote of the members elected to each house, taken by yeas and nays may
> otherwise direct; and further except that, if the general assembly recesses for thirty days
> or more it may prescribe by joint resolution that laws previously passed and not effective
> shall take effect ninety days from the beginning of the recess."

103.    MO Const art III § 29 provides when any Missouri congressional map enacted by the

Missouri General Assembly without an emergency clause will not go in effect until August 28,

2021, which is ninety (90) days after the adjournment of the 2022 Missouri General Assembly

set pursuant to MO Const art III § 20(a) to "adjourn at midnight on May thirteenth" 2022.

104.    Pursuant to section 115.1219(2) RSMo, the Missouri Secretary of State has an official

duty to conduct a 2022 Primary election for United States Congress on August 2, 2022, which

states:

"The primary election day shall be the first Tuesday after the first Monday in August of even-numbered years."

105.    Because MO Const art III § 45 clearly declares that any Missouri congressional map shall be enacted as a law passed by the General Assembly and MO Const art III § 29 provides that any Missouri statute passed by the General Assembly shall not take effect until August 28, 2022, which is ninety days after the adjournment of the 2022 Missouri General Assembly Legislative Session, there is no question that any Missouri congressional map enacted without an emergency clause will not go into legal effect until after August 2, 2022, the election date for the 2022 Primary election for United States Congress in the State of Missouri.

106.    Defendants are constitutionally-barred by MO Const art III § 29 and the Elections Clause from utilizing any Missouri congressional map enacted by the 101st Missouri Congressional Assembly without an emergency clause pursuant to MO Const art III § 29 to conduct the 2022 Missouri Primary congressional election.

## COUNT V
### Enforcement of Sections 115.121(2) RSMo and 115.341 RSMo
### Primary Congressional Election Date
### (The Elections Clause)

107.    Plaintiff Berry incorporates by reference all preceding allegations and facts.

108.    US Const art I § 4 states, "(t)he Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators", which requires the State of Missouri to abide by its own election statutes when utilized to conduct any congressional election.

24

109.     Section 115.121(2) RSMo states "The primary election day shall be the first Tuesday after the first Monday in August of even-numbered years."

110.     Section 115.341 RSMo states: "For the nomination of candidates to be elected at the next general election, a primary election shall be held on the first Tuesday after the first Monday in August of even-numbered years."

111.     Section 115.121(2) RSMo and section 115.341 RSMo provides the 2022 Missouri Primary congressional election date shall be set for August 2, 2022.

112.     There are only two legal authorities that authorize Missouri to change the 2022 Missouri Primary congressional election day date from August 2, 2022, which include section 44.100 RSMo or section 115.024 RSMo.

113.     The Missouri Secretary of State is required pursuant to section 115.121(2) RSMo and section 115.341 RSMo to conduct a 2022 Missouri Primary election for United States Congress on August 2, 2022, unless the 2022 Missouri congressional date is rescheduled pursuant to section 44.100 RSMo or section 115.024 RSMo.

114.     Pursuant to section 44.100 RSMo, the failure of the Missouri General Assembly to enact a Missouri congressional map does not constitute an "emergency" permitting the Missouri General Assembly to pass a resolution or the Missouri Governor to issue a proclamation granting the authority to change the 2022 Primary congressional election from any date other than "the first Tuesday after the first Monday in August of even-numbered years."

115.     Pursuant to section 115.024 RSMo, the failure of the Missouri General Assembly to

enact a Missouri congressional map does not constitute a "disaster" permitting the "election committee" consisting of three Missouri appellate judges to consider any petition to reschedule the 2022 Primary congressional election within the Eastern District Missouri Court of Appeals from any date other than "the first Tuesday after the first Monday in August of even-numbered year" as required by 115.121(2) RSMo and section 115.341 RSMo.

116.    Neither section 44.100 RSMo or section 115.024 RSMo provides for the rescheduling of the 2022 Primary congressional election from August 2, 2022, due to the failure of the Missouri General Assembly to enact a 2022 Missouri congressional map or anything related to the 2012 Missouri Congressional Map, and as such, Defendant Ashcroft is statutorily-barred pursuant to 115.121(2) RSMo and section 115.341 RSMo, and constitutionally-barred pursuant to the Elections Cause, from rescheduling the 2022 Primary congressional election from any date other than August 2, 2022, due to the failure of the Missouri General Assembly to enact a 2022 Missouri congressional map or anything related to the 2012 Missouri Congressional Map.

117.    Defendants are statutorily-barred by 115.121(2) RSMo and section 115.341 RSMo, and constitutionally-barred by the Elections Clause, from rescheduling the 2022 Primary congressional election from any date other than August 2, 2022, due to the failure of the Missouri General Assembly to enact a 2022 Missouri congressional map or anything related to the 2012 Missouri Congressional Map.

## COUNT VI
### Enforcement of Section 115.349(1) RSMo
### Primary Congressional Candidate Filing Date

**(The Elections Clause)**

118.     Plaintiff Berry incorporates by reference all preceding allegations and facts.

119.     US Const art I § 4 states, "(t)he Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators", which requires the State of Missouri to abide by its own election statutes when utilized to conduct any congressional election.

120.     Section 115.349(1) RSMo states: "Except as otherwise provided in sections 115.361 to 115.383 or sections 115.755 to 115.785, no candidate's name shall be printed on any official primary ballot unless the candidate has filed a written declaration of candidacy in the office of the appropriate election official by 5:00 p.m. on the last Tuesday in March immediately preceding the primary election."

121.     Pursuant to Section 115.349(1) RSMo, the Missouri Secretary of State was statutorily-required to cease accepting or amending congressional candidate filing for the 2022 Missouri Primary congressional election at 5:00pm on March 29, 2022.

122.     Sections 115.361 to 115.383 and sections 115.755 to 115.785 are irrelevant to Missouri Primary congressional candidate elections.

123.     There is no constitutional or statutory procedure that authorizes the Missouri Secretary of State to permit Missouri congressional candidates to file or amend a congressional candidate filing for the 2022 Missouri Primary congressional election after 5:00pm on March 29,

2022.

124.   Defendants are statutorily-barred pursuant to Section 115.349(1) and
constitutionally-barred pursuant to the Elections Cause from permitting any Missouri
congressional candidates to file or amend a congressional candidate filing for the 2022 Missouri
Primary congressional election after 5:00pm on March 29, 2022.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully request that the Court:

A. Grant a temporary restraining order prohibiting Defendants, their agents, and assigns,

from:

(i) Conducting any 2022 Missouri congressional election using the 2012 Missouri
Congressional Map;

(ii) Conducting any 2022 Missouri congressional election using any
congressional map enacted by the 101st Missouri General Assembly without an
emergency clause pursuant to Article III, Section 29 of the Missouri Constitution;
(iv) Conducting any 2022 Missouri Primary congressional election on any date
other than August 2, 2022, for any cause related to the 2012 Missouri
Congressional Map or any enactment of a 2022 Missouri congressional map; and
(v) Permitting any Missouri congressional candidates to file or amend a
congressional candidate filing for the 2022 Missouri Primary congressional
election after 5:00pm on March 29, 2022;

B.  Convene a three-judge district court to hear and determine Plaintiff's claims that the:

    (i) 2012 Missouri Congressional Map violates the U.S. Constitution;

    (ii) 2012 Missouri Congressional Map violates the Missouri Constitution;

    (iii) Defendants conducting any 2022 Missouri congressional election using any congressional map enacted by the 101st Missouri General Assembly without an emergency clause is in violation of Article III, Section 29 of the Missouri Constitution;

    (iv) Defendants conducting any 2022 Missouri Primary congressional election on any date other than August 2, 2022, for any cause related to the 2012 Missouri Congressional Map or any enactment of a 2022 Missouri congressional map is in violation of section 115.121(2) RSMo and section 115.341 RSMo, and the Elections Clause; and

    (v) Defendants are prohibited from permitting any Missouri congressional candidates to file or amend a congressional candidate filing for the 2022 Missouri Primary congressional election after 5:00pm on March 29, 2022;

C.  Declare that the:

    (i) 2012 Missouri Congressional Map violates the "one man, one vote" principle contained in Article I, Section 2 of the U. S. Constitution;

    (ii) 2012 Missouri Congressional Map violates the Fourteenth Amendment's Equal Protection Clause;

(iii) 2012 Missouri Congressional Map violates the "nearly equal in population as may be" principle contained in Article III, Section 45 of the Missouri Constitution;

(iv) 2012 Missouri Congressional Map is unconstitutional for the purpose of conducting the 2022 Missouri Primary congressional election;

(v) Defendants conducting any 2022 Missouri congressional election using any congressional map enacted by the 101st Missouri General Assembly without an emergency clause is in violation of Article III, Section 29 of the Missouri Constitution and the Elections Clause;

(vi) Defendants conducting any 2022 Missouri Primary congressional election on any date other than August 2, 2022, for any cause related to the 2012 Missouri Congressional Map or any enactment of a 2022 Missouri congressional map is in violation of 115.121(2) RSMo and section 115.341 RSMo, and the Elections Clause; and

(vii) Defendants permitting any Missouri congressional candidates to file or amend a congressional candidate filing for the 2022 Missouri Primary congressional election after 5:00pm on March 29, 2022, is in violation of Section 115.349(1) and the Elections Clause;

D. Grant a preliminary and permanent injunction prohibiting Defendants, their agents, and assigns, from:

(i) Conducting any 2022 Missouri congressional election using the 2012 Missouri Congressional Map;

(ii) Conducting any 2022 Missouri congressional election using any congressional map enacted by the 101st Missouri General Assembly without an emergency clause pursuant to Article III, Section 29 of the Missouri Constitution;

(iii) Conducting any 2022 Missouri Primary congressional election on any date other than August 2, 2022, for any cause related to the 2012 Missouri Congressional Map or any enactment of a 2022 Missouri congressional map; and

(iv) Permitting any Missouri congressional candidates to file or amend a congressional candidate filing for the 2022 Missouri Primary congressional election after 5:00pm on March 29, 2022;

E. Assume jurisdiction and order the approval of a Missouri congressional map utilizing the 2020 United States Census results certified to the Missouri Governor on August 12, 2021;

F. Award Plaintiff his costs, expenses, disbursements, and reasonable attorneys' fees incurred in bringing this action, in accordance with 52 U.S.C. § 10310(e) and 42 U.S.C. § 1988;

G. Retain jurisdiction over this matter until all Defendants have complied with all orders and mandates of this Court; and

H. Grant such other and further relief as the Court may deem just and proper.

Respectfully Submitted

Paul Berry III
Plaintiff, Pro Se
11932 Barbara
Maryland Heights, MO 63043
PBIIIUSA@gmail.com
3147559252